## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

| | | |
|---|---|---|
| TONY DAUGHERTY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 5:12-0043 |
| | ) | |
| DENNIS DINGUS, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

### PROPOSED FINDINGS AND RECOMMENDATION

In this matter under 28 U.S.C. § 2254, Respondent has filed a Motion for Summary Judgment and Memorandum in Support (Document Nos. 32 and 37.) Respondent contends, among other things, that this matter must be dismissed because Petitioner failed to file it within the one year period allowed under 28 U.S.C. § 2244(d)(1). Having considered the evidence, the positions of the parties and applicable law with respect to Respondent's contention, the undersigned has determined and hereby respectfully recommends that Respondent's Motion be denied.

### PROCEDURE AND FACTS

On December 6, 2011, Petitioner, acting *pro se*, filed a Petition Under 28 U.S.C. § 2254 For Writ of *Habeas Corpus* By a Person in State Custody in the Northern District of West Virginia. (Document No. 1.) On the same date, the Clerk of the Court sent Petitioner a "Notice of Deficient Pleading" and appropriate forms. (Document No. 3.) On December 16, 2011, Petitioner filed his form Petition Under 28 U.S.C. § 2254 For Writ of *Habeas Corpus* By a Person in State Custody. (Document No. 6.) Petitioner alleges the following grounds for *habeas* relief:

1.  Prejudice of a Juror McBride and currently I feel ineffective counseling since Mr. Bruce won't finish the job because he feels there's no justice for one accused of such crimes.

2.      Jury prejudice, no transcripts, ineffective counseling.

(Id.) By Order entered January 9, 2012, the Northern District of West Virginia transferred the case

to this District. (Document No. 12.) Specifically, the Northern District determined that Petitioner

was challenging his State Court conviction arising out of the Circuit Court of Summers County,

West Virginia, which is located within the jurisdiction of the Southern District of West Virginia.

(Id.) By Standing Order, this matter was referred to the undersigned United States Magistrate Judge

for the submission of proposed findings of fact and a recommendation for disposition pursuant to

28 U.S.C. § 636(b)(1)(B). (Document No. 14.)

**The Underlying Proceedings:**

By Indictment filed on March 23, 2001, Petitioner was charged with four counts of First

Degree Sexual Assault (Counts I, V, IX, and XIII), four counts of Third Degree Sexual Assault

(Counts II, VI, X, and XIV), four counts of Sexual Abuse by a Parent (Counts III, VII, XI, XV), and

four counts of Incest (Counts VI, VIII, XII, and XVI) in Summers County, West Virginia. State v.

Daugherty, Case No. 01-F-46 (Cir. Ct. Summers Co. Sept. 30, 2004). Following a jury trial,

Petitioner was convicted on September 30, 2004, of four counts of Sexual Abuse by a Parent.

(Document No. 32-1, p. 50.) On March 25, 2005, Petitioner, by counsel, Barry L. Bruce, filed a

Motion for a Judgment of Acquittal and New Trial. (Id., p. 56.) The Circuit Court denied Petitioner's

Motion the same day. By Order dated September 26, 2005, the Circuit Court sentenced Petitioner

to imprisonment in the penitentiary for "not less than ten nor more than twenty years for each count

of the four counts of Sexual Abuse by a Parent for which the Defendant stands convicted, the said

sentences to run concurrent with one another." (Id., pp. 51 - 52.) On October 6, 2005, Petitioner, by

counsel, filed a Motion for New Trial alleging jury misconduct. (Id., p. 56.) The Circuit Court

2

conducted an evidentiary hearing on November 30, 2005. (Document No. 32-1, pp. 40 - 49.) By

Order dated December 27, 2005, the Circuit Court denied Petitioner's Motion for New Trial. (Id.)

On February 2, 2006, Petitioner, by counsel, Mr. Bruce, filed a petition for appeal with the

West Virginia Supreme Court of Appeals. (Id., pp. 2 - 39.) In his petition, Petitioner asserted the

following errors:

A.   Defendant asserts that the Circuit Court erred in denying Defendant's Motion
for New Trial based on juror bias on the grounds that Defendant failed to
establish prejudice as a result of Juror McBride's presence on the jury.

B.   Defendant asserts that he was deprived of his Constitutional right to be tried
by a jury free from bias and prejudice due to Juror McBride's presence on the
jury.

C.   Defendant asserts that the Circuit Court erred in denying Defendant's Motion
for Acquittal in that the State of West Virginia failed to produce sufficient
evidence to sustain Defendant's conviction.

D.   Defendant asserts that he was deprived of his Constitutional right to a fair
trial as a result of improper and prejudicial remarks made by the Summers
County Prosecuting Attorney.

E.   Defendant asserts that he was deprived of his Constitutional right to a fair
trial by the use of an improper jury instruction which led to a non-responsive
verdict, a non-unanimous verdict, or a compromised verdict.

F.   Defendant asserts that he was deprived of his Constitutional right to a fair
trial based on the cumulative effect of:

1.   The improper dismissal of the alternative juror;
2.   The improper judicial comments to the jury relating to the Allen
Charge; and
3.   The prejudicial effect of the dropped charges.

(Id.) On May 10, 2006, the West Virginia Supreme Court granted Petitioner's "petition for appeal

as to Assignment of Error # 1 only." (Id., p. 59.) By Per Curiam Opinion entered on November 29,

2006, the West Virginia Supreme Court denied Petitioner's appeal. State v. Daugherty, 650 S.E.2d

114 (W.Va. 2006)(*per curiam*). Petitioner, by counsel, filed a petition for rehearing on December 29, 2006. The West Virginia Supreme Court denied Petitioner's petition on January 24, 2007. (Id., p. 64.) Petitioner filed a Petition for a Writ of Certiorari in the United States Supreme Court, which was denied on October 1, 2007. Daugherty v. West Virginia, 552 U.S. 829, 128 S.Ct. 49, 169 L.Ed.2d 44 (2007).

On February 2, 2009, one year and four months after the United States Supreme Court denied Petitioner's Petition for a Writ of Certiorari, Petitioner, by counsel, Mr. Bruce, filed his first Petition for Writ of *Habeas Corpus* in the Circuit Court of Marshall County, West Virginia. By Order entered the same day, the Petition was transferred to Summers County. Daugherty v. Seifert, Case No. 09-C-007 (Cir. Ct. Summers Co. Dec. 11, 2009). In his Petition, Petitioner alleged the following grounds for relief:

1.    Petitioner's right to an impartial jury was violated.

2.    The West Virginia Supreme Court of Appeals failed to consider the entire record on direct appeal.

(Id., pp. 23 - 25.) The Circuit Court conducted an omnibus hearing on June 22, 2009. (Id., p. 21.) By order dated December 11, 2009, the Circuit Court made findings of fact and conclusions of law addressing the grounds raised by Petitioner, and denied his *habeas* petition on the merits. (Id., pp. 21 - 25.)

On May 12, 2010, Petitioner, by counsel, Mr. Bruce, filed his petition for appeal from the Circuit Court's decision. (Document No. 32-2, p. 5 - 20.) In his Petition for Appeal, Petitioner asserted the following errors:

1.    Petitioner's right to an impartial jury was violated.

2.    The West Virginia Supreme Court of Appeals failed to consider the entire record.

4

(Id.) On June 22, 2010, the West Virginia Supreme Court refused Petitioner's appeal. (Id., p. 4.); State v. Daugherty, Case No. 100582 (W. Va. June 22, 2010).

On August 25, 2011, Petitioner filed a Complaint against Mr. Bruce with the West Virginia Office of Disciplinary Counsel stating, among other things, that Mr. Bruce "informed me that he would be filing my § 2254 Federal Habeas Corpus back in January, 2011. On April 7, 2011, Mr. Bruce came to see me here at Huttonsville and informed me that he was sorry that he had not yet filed my Federal Writ of Habeas Relief . . . and he promised that he would have it done by the first part of May." (Document No. 80, pp. 2 - 3 and 9 - 10.) The record contains copies of two letters which Mr. Bruce sent to the Office of Disciplinary Counsel. Mr. Bruce stated in a letter to Disciplinary Counsel dated September 19, 2011, that "[t]his law firm at no time committed to or contracted with Mr. Daugherty to file a Federal post-conviction proceeding. In addition, we received no money to do so nor would we accept any money." (Id., p. 23.) Mr. Bruce stated in a letter to Disciplinary Counsel dated November 2, 2011, that "[o]n March 12, 2010, we filed a Petition for Writ of Habeas Corpus with the West Virginia Supreme Court of Appeals. Case No. 100582. On June 22, 2010, the Supreme Court of Appeals denied the Petition for Writ of Habeas Corpus. Our representation of Mr. Daugherty concluded at that time." (Id., p. 17.) On December 12, 2011, Mr. Bruce wrote Petitioner in regard to a letter which Petitioner had sent to the Office of Disciplinary Counsel stating, "[p]lease refer to our November 2, 2011 letter wherein we advised that our representation of you concluded following the denial of the Petition for Writ of Habeas Corpus by the West Virginia Supreme Court of Appeals." (Id., p. 24.) Mr. Bruce's time sheets indicate his and an associate's legal research after Mr.Bruce visited Petitioner at Huttonsville Correctional Center on April 7, 2011, including the associate's May 31, 2011, legal research regarding "statute of

limitations." (<u>Id.</u>, pp. 15-16.)

On November 18, 2011, Petitioner, acting *pro se*, filed a Petition for Writ of Mandamus in the West Virginia Supreme Court. (<u>Id.</u>, pp. 32 - 36.); <u>Daugherty v. Hoke</u>, Case No. 11-1614 (W. Va.). In his Petition, Petitioner argues that his due process rights were violated because he was denied his right to appeal and denied a copy of his trial transcripts. (<u>Id.</u>)

On January 27, 2012, Petitioner, acting *pro se*, filed his second Petition for Writ of *Habeas Corpus* in the Circuit Court of Summers County. (<u>Id.</u>, pp. 38 - 45.); <u>Daugherty v. Hoke</u>, Case No. 12-C-124 (Cir. Ct. Summers Co.). In his Petition, Petitioner alleged the following grounds for relief:

1.   Petitioner's right to an impartial jury was violated.

2.   The West Virginia Supreme Court of Appeals failed to consider the entire record; no transcripts.

3.   There was no crime and no biological proof of any crime.

4.   My attorney was incompetent in filing any kind of appeal without both sides of the transcripts.

(<u>Id.</u>, pp. 41 - 42.) On February 16, 2012, Respondent filed in the West Virginia Supreme Court a "Motion of the Respondents, Circuit Court of Summers County and Adrian Hoke, Warden, to Consolidate Cases and Permit the Respondents to File a Consolidated Summary Response" regarding Petitioner's Petition for Writ of Mandamus and second *habeas* Petition. (<u>Id.</u>, p. 78 - 82.) By Order entered on March 13, 2012, the West Virginia Supreme Court granted Respondent's Motion and consolidated the actions. (<u>Id.</u>, p. 77.) The West Virginia Supreme Court of Appeals dismissed the action on February 19, 2013.

**<u>The Instant Proceedings</u>:**

Petitioner filed the instant Petition Under 28 U.S.C. § 2254 for Writ of *Habeas Corpus* By

a Person in State Custody on December 6, 2011. (Document No. 1.) As Exhibits, Petitioner attaches the following: (1) A copy of a letter from Mr. Bruce dated September 19, 2011, addressed to Jessica Donahue, Lawyer Disciplinary Counsel (Document No. 6-1.); (2) A copy of Petitioner's "Petition for Writ of *Habeas Corpus*" as filed with the West Virginia Supreme Court on May 12, 2010 (Document No. 6-2, pp. 1, 3 - 27.); (3) A copy of an Order from the West Virginia Supreme Court dated June, 2010, refusing Petitioner's appeal (Id., p. 2.); (4) A copy of the West Virginia Supreme Court's Scheduling Order as entered in State of West Virginia ex rel. Tony Daugherty v. Circuit Court of Summers County, Case No. 11-1614 (Document No. 6-3.); (5) A copy of Petitioner's "Writ of Mandamus" as filed on November 18, 2011, in West Virginia Supreme Court (Case No. 11-1614) (Document No. 6-4.); (6) A copy of a Docket Sheet from the Circuit Court of Summers County involving State v. Daughtery, 01-F-46 (Document No. 6-5.); (7) A copy of a letter from Petitioner to the Clerk of the United States Supreme Court dated December 14, 2011 (Document No. 6-6.); and (8) A copy of Petitioner's Transcript Request Form as filed in the West Virginia Supreme Court (Document No.  6-8.).

On January 20, 2012, Petitioner filed a letter in support of his Petition. (Document No. 15.) As an Exhibit, Petitioner attached a copy of a letter from Mr. Bruce dated December 12, 2011, wherein Mr. Bruce requested that Petitioner "[p]lease refer to our November 2, 2011, letter wherein we advised that our representation of you concluded following the denial of the Petition for Writ of *Habeas Corpus* by the West Virginia Supreme Court." (Id., p. 2.)

On March 8, 2012, Petitioner's mother filed Exhibits in support of Petitioner's *habeas* Petition. (Document No. 16.) The following documents were filed as Exhibits: (1) A copy of the "Consolidate Summary Response of the Respondents, Circuit Court of Summers County and Adrian

Hoke, Warden" as filed on February 16, 2012, in the West Virginia Supreme Court in Case No. 11-1614 (Id., pp. 4 - 14.); (2) A copy of the West Virginia Supreme Court's Scheduling Order as entered in State of West Virginia ex rel. Tony Daugherty v. Hoke, Case No. 12-0124 (Id., p. 15.); (3) A copy of the "Motion of the Respondents, Circuit Court of Summers County and Adrian Hoke, Warden, to Consolidate Cases and Permit the Respondents to File a Consolidated Summary Response" as filed on February 16, 2012, in the West Virginia Supreme Court in Case No. 11-1614 (Id., pp. 16 - 20.); and (4) A copy of the "Supplemental Appendix" as filed in the West Virginia Supreme Court in Case No. 11-1614 (Id., pp. 21 - 45.).

By Order entered on June 12, 2012, the undersigned directed Respondent to show cause, if any, why Petitioner's Petition should not be granted. (Document No. 26.) On July 30, 2012, in response to the Court's Order, Respondent filed his Answer, Motion for Summary Judgment and Memorandum in Support thereof with Exhibits. (Document Nos. 31, 32, and 37.) First, Respondent argues that "[t]he current Petition should be dismissed because the Petitioner has failed to file within the applicable period of limitation as set forth in § 2244(d)." (Document No. 37, pp. 13 - 17.) Respondent next argues that assuming the Court finds Petitioner's Petition to be timely, the Court should dismiss his Petition based on the following: (1) "By filing a Petition for Writ of Mandamus and a Second State *Habeas* Petition, the Petitioner has rendered his grounds for relief unexhausted and any ruling this Court may make is premature" (Id., pp. 17 - 19.); (2) "Petitioner's ineffective assistance of counsel and failure to provide trial transcript claims were raised for the first time in his second petition for State *habeas* relief; therefore, they are unexhausted" (Id., pp. 19 - 21.); and (3) "This Court should refuse to hear Petitioner's case pursuant to the Younger abstention doctrine until State court has completed consideration of the Petitioner's pending State Petitions" (Id., pp. 21 - 22.)

8

As Exhibits, Respondent files the following: (1) A copy of Petitioner's "Docketing Statement" from the West Virginia Supreme Court involving his direct appeal (Document No. 32-1, pp. 2 - 5); (2) A copy of Petitioner's Petition for Appeal concerning his underlying conviction as filed on February 2, 2006 in the West Virginia Supreme Court (Id., pp. 6 - 39.); (3) A copy of the Circuit Court's "Order Denying Motion for New Trial" dated December 27, 2005 (Id., pp. 40 - 49.); (4) A copy of Petitioner's Commitment Order as filed in the Circuit Court of Summers County (Id., p. 50.); (5) A copy of Petitioner's Sentencing Order as filed in the Circuit Court of Summers County on September 26, 2005 (Id., pp. 51 - 52.); (6) A copy of the Index concerning Case No: 01-F-46 as filed in the West Virginia Supreme Court on February 2, 2006 (Id., pp. 53 - 57.); (7) A copy of the West Virginia Supreme Court's Order dated May 10, 2006, granting Petitioner's Petition for Appeal as to Error 1 in Case No. 33075 (Id., p. 59.); (8) A copy of West Virginia Supreme Court's Order dated July 28, 2006, granting the State's Motion to Reschedule Oral Arguments in Case No. 33075 (Id., pp. 60 - 61.); (9) A copy of West Virginia Supreme Court's Order dated August 15, 2006, granting the State's Motion for Extension of Time to File its Brief in Case No. 33075 (Id., pp. 62 - 63.); (10) A copy of West Virginia Supreme Court's Order dated January 24, 2007, denying Petitioner's Petition for Rehearing in Case No. 33075 (Id., p. 64.); (11) A copy of Petitioner's Appellant's Brief as filed on July 13, 2006, in the West Virginia Supreme Court in Case No. 33075 (Id., pp. 66 - 78.); (12) A copy of the "Brief of Appellee State of West Virginia" as filed on August 28, 2006, in the West Virginia Supreme Court in Case No. 33075 (Id., pp. 80 - 100.); (13) A copy of "Appellant's Reply to Brief of Appellee State of West Virginia" as filed on September 13, 2006, in the West Virginia Supreme Court in Case No. 33075 (Id., pp. 102 - 108.); (14) A copy of State v. Daugherty, 221 W.Va. 15, 650 S.E.2d 114 (W.Va. 2006) (Id., pp. 110 - 117.); (15) A copy of

9

Daugherty v. West Virginia, 552 U.S. 829, 128 S.Ct. 49, 169 L.Ed.2d 44 (2007) (Document No. 32-2, p. 2.); (16) A copy of the West Virginia Supreme Court's Order dated June 22, 2010, refusing Petitioner's Petition for Appeal regarding the Circuit Court's denial of his *habeas* petition (Case No. 100582) (Id., p. 4.); (17) A copy of Petitioner's "Petition for Writ of *Habeas Corpus*" as filed in the West Virginia Supreme Court on May 12, 2010 in Case No. 100582 (Id., pp. 5 - 20.); (18) A copy of the Circuit Court's Order dated December 11, 2009, denying Petitioner's *habeas* Petition (Id., pp. 21 - 25.); (19) A copy of Petitioner's "Appellate Transcript Request" (Id., pp. 26 - 27.); (20) A copy of the "Affidavit of Veronica L. Bird" (Id., p. 28.); (21) A copy of the "Affidavit of Mark Jenkins" (Id., pp. 29 - 30.); (22) A copy of Petitioner's "Writ of Mandamus" as filed in the West Virginia Supreme Court on November 18, 2011 (Id., pp. 32 - 36.); (23) A copy of Petitioner second *habeas* Petition as filed on January 27, 2012, in the Circuit Court of Summers County (Id., pp. 38 - 56.); (24)   A copy of a letter from Petitioner to the Clerk of the West Virginia Supreme Court dated January 23, 2012 (Id., p. 59.); (25) A copy of a letter from Petitioner to the Clerk of the United States Supreme Court dated December 14, 2011 (Id., p. 60.); (26) A copy of a letter from Petitioner to this Court dated January 17, 2012 (Id., p. 61.); (27) A copy of the Docket Sheet from the Northern District of West Virginia for Case No: 1:11-cv-0194 (Id., pp. 62 - 63.); (28) A copy of a letter from Mr. Bruce to Jessica Donahue, Lawyer Disciplinary Counsel, dated September 19, 2011 (Id., pp. 64 - 66.); (29) A copy of Petitioner's "Supreme Court of Appeals of West Virginia Appellate Transcript Request Form" and "Financial Affidavit & Application" (Id., pp. 67 - 75.); (30) A copy of the West Virginia Supreme Court's Order dated March 13, 2012, granting the State's Motion to Consolidate in Case No. 11-1614 (Id., p. 77.); (31) A copy of the "Motion of the Respondents, Circuit Court of Summers County and Adrian Hoke, Warden, to Consolidate Cases and Permit the Respondents to

File a Consolidated Summary Response" as filed on February 16, 2012, in the West Virginia Supreme Court in Case No. 11-1614 (<u>Id.</u>, pp. 78 - 82.); and (32) A copy of the "Consolidate Summary Response of the Respondents, Circuit Court of Summers County and Adrian Hoke, Warden" as filed on February 16, 2012, in the West Virginia Supreme Court in Case No. 11-1614 (<u>Id.</u>, pp. 84 - 120.)

On July 31, 2012, Notice pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), was issued to Petitioner, advising him of his right to file a response to Respondent's Motion for Summary Judgment. (Document No. 35.) On September 19, 2012, Petitioner filed his letter-form Response to Respondent's Motion for Summary Judgment." (Document No. 41.) First, Petitioner appears to argue that his Petition is timely because "[o]n April 7, 2011, Barry Bruce, my ex-attorney, came to Huttonsville to visit me and advised me that he would have my Federal Post Conviction proceeding completed and filed by the first part of June, 2011." (<u>Id.</u>, p. 1.) Petitioner states that "Mr. Bruce did not file it as he said he would" and "[t]he time line ran out by November, 2011." (<u>Id.</u>) Next, Petitioner argues that he is innocent and his ex-wife conspired with the State to "make up a crime." (<u>Id.</u>, pp. 1 - 2.) Petitioner alleges that his ex-wife fabricated the facts of the sexual assault and "drugged a not so stable child" into confirming the facts. (<u>Id.</u>, p. 2.)

On October 10, 2012, Respondent filed his "Reply to Petitioner's Response to Respondent's Motion for Summary Judgment." (Document No. 43.) First, Respondent argues that Petitioner's claim that Mr. Bruce failed to file his Federal *habeas* petition "by the first part of June 2011" is an unexhausted claim. (<u>Id.</u>, p. 2.) Respondent notes that Petitioner failed to assert this claim in his State and Federal *habeas* petitions. (<u>Id.</u>) Next, Respondent argues that "apart from the Petitioner's self-serving assertion, there is no evidence that defense counsel agreed to file Petitioner's federal

11

*habeas*." (Id.) Respondent asserts "[t]here is no retainer agreement, correspondence, or corroborating records." (Id.) Third, Respondent argues that Petitioner asserts new claims that were never addressed in State Court. (Id., pp. 2 - 3.) Finally, Respondent states that "Petitioner has raised numerous irrelevant facts which have nothing to do with his claims before this Court." (Id., p. 3.)

Petitioner sent the Court four letters from late October to early December, 2012. (Document Nos. 44 - 47.) On October 29, 2012, Petitioner filed a letter dated October 22, 2012, stating "[f]act is, still I have told nothing but the truth and as far as Barry L. Bruce being at Huttonsville saying by the First of June the Federal post-conviction would be filed, I'm sure they have it documented on April 7, 2011. * * * There are no transcripts and no contract between me and Barry Bruce. There was once." (Document No. 44.) On November 2, 2012, Petitioner filed a letter continuing to argue that his ex-wife fabricated evidence resulting in his underlying conviction. (Document No. 45.) On November 6, 2012, Petitioner filed a copy of the October 22, 2012, letter which is Document No. 44 along with a copy of a September 27, 2012, letter and "Objective Memorandum" from Mr. Mark Rieber of the National Legal Research Group, Inc., in Charlottesville, Virginia, to Attorney Paul Detch in Lewisburg, West Virginia, considering the application of AEDPA's one-year statute of limitations in Petitioner's case. (Document No. 46.) On December 5, 2012, Petitioner filed a letter requesting appointment of counsel and including a copy of Petitioner's request in mandamus for transcripts. (Document No. 47.)

By Order filed on January 11, 2013, the Court scheduled an evidentiary hearing in view of Petitioner's claim that he retained Mr. Bruce to file a Section 2254 Petition and required Mr. Bruce to attend. (Document No. 48.) By Order filed on January 15, 2013, the Court appointed attorney Thomas J. Gillooly pursuant to 18 U.S.C. § 3006A(b) to represent Petitioner "at the . . . hearing and

in further proceedings thereafter if appropriate." (Document No. 50.)

      The Court held the evidentiary hearing on June 4, 2013. (Document Nos. 78 - 81.) Mr. Bruce and Petitioner testified. Mr. Bruce testified that it was his firm's policy to require clients to enter written retainer agreements for legal representation in criminal cases (Document No. 82 (Transcript), p. 13.) but he was not sure Petitioner did so. (Id., p. 14.) An initial amount was paid as a retainer and Mr. Bruce's firm withdrew from that amount based upon the time which Mr. Bruce spent working on Petitioner's case. (Id., pp. 14 - 15.) As the retainer was depleted, Mr. Bruce's firm notified Petitioner that he should make further payments for the firm's services. (Id., p. 15, 18.) Mr. Bruce testified that "the scope of the original retainer agreement was to try the circuit court case. * * * When we went to go to the Supreme Court, Mr. Daugherty knew there was going to be fees, the same fees were going to apply to the Supreme Court appeal, and we agreed to – verbally agreed to do – continue the representation." (Id., p. 19.) Mr. Bruce acknowledged that his firm represented Petitioner through trial in the Summers County Circuit Court and on direct appeal to the West Virginia Supreme Court of Appeals, sought review in the United States Supreme Court and then instituted *habeas* proceedings in the Summers County Circuit Court and appealed the Circuit Court's ruling in those proceedings. (Id., pp. 24 - 26.) Respecting his firm's termination of representation, Mr. Bruce stated, "We'll do it verbally or in writing." (Id., p. 18.) In Petitioner's case, Mr. Bruce testified that his firm did not give Petitioner written notification that representation terminated. (Id., p. 19.) Mr. Bruce testified that he informed Petitioner verbally on April 7, 2011, when he visited Petitioner at Huttonsville Correctional Center that his firm's representation ended when the West Virginia Supreme Court refused to review the Summers County Circuit Court's ruling in his *habeas* proceedings (June 22, 2010). (Id., pp. 30 - 31.) Apparently, Mr. Bruce also informed Petitioner that

he should not institute Federal *habeas corpus* proceedings during his April 7, 2011, visit with Petitioner as Petitioner did not have a meritorious federal claim. (Id., pp. 31, 34, 35.) Mr. Bruce explained that after the West Virginia Supreme Court of Appeals refused to review the Summers County Circuit Court's ruling in Petitioner's *habeas* proceedings on June 22, 2010, he had an associate in his firm conduct research and prepare a *habeas* petition for filing in Federal Court. (Id., pp. 31 - 33.) Mr. Bruce testified that "I took all the research that he had done, . . . the Fourth Circuit research, read it, read the case law, and determined there was no merit. I could not in good faith file that petition." (Id., p. 33.) Even though Mr. Bruce had his associate look into instituting Federal *habeas* proceedings and prepare a petition, Mr. Bruce indicated that he was not retained to do so. (Id., p. 34.) Mr. Bruce testified, "I didn't sign up for a federal *habeas corpus* petition. I never filed one before in my life. How would I sign up and say, 'I'll do it for you,' when I've never done one?" * * * When the Supreme Court made its decision, I had no contact and no conversation with Mr. Daugherty about continuing his case to a federal *habeas corpus*. I took it on my own to examine whether that had any merit to it, and it did not." (Id., pp. 34 - 35.) Mr. Bruce testified that he did not tell Petitioner that he was looking into the merits of a Federal *habeas corpus* proceeding in Petitioner's behalf but had his associate conduct research and prepare a petition "[b]ecause [Petitioner] was writing me letters . . .. He wrote me letters and chastising me. And I'd had a long relationship with him." (Id., p. 35.) When asked about his and an associates billing entries on April 29 and May 31, 2011, indicating "Researching habeas corpus petition" and "Research statute of limitations and searching for Supreme Court cases", Mr. Bruce stated, "I was just checking to see if there was any other new cases from the Fourth Circuit that impacted my decision." (Id., p. 38.) Mr. Bruce maintained that "I wanted to make sure that there was no changes, new cases, that would

14

allow me to recommend or tell Mr. Daugherty to file a *habeas* petition." (<u>Id.</u>, p. 39.) Mr. Bruce then

testified as follows respecting the federal statute of limitations (Id., pp. 40 - 41.):

> Mr. Gillooly. What did you think about the statute of limitations during all of this work?
>
> Mr. Bruce. I – I didn't think about it.
>
> Mr. Gillooly. Did you know there was one?
>
> Mr. Bruce. I was pretty sure it was a year, yes.
>
> Mr. Gillooly. Why were you bothering to research the merits if you knew that?
>
> Mr. Bruce. That's a good question.
>
> Mr. Gilooly. Is it your testimony that you knew –
>
> Mr. Bruce. No. I'm not saying that.
>
> Mr. Gillooly. You were pretty sure – you were pretty sure that it was a one-year statute of limitations?
>
> Mr. Bruce. No, I – to be honest with you, I can't say that. I cannot say that. I have never done a federal *habeas* petition before. I wasn't positive of the statute of limitations.

When asked if he spoke with Petitioner about instituting a federal *habeas* proceeding, Mr. Bruce

testified that after the West Virginia Supreme Court of Appeals issued its decision upon Petitioner's

direct appeal, he sent Petitioner the John Grisham novel "The Innocent Man" which involved federal

*habeas* proceedings and "I said, 'Read the book. This is the avenue you can follow.'" (<u>Id.</u>, p. 41.)

On cross examination, Mr. Bruce testified that he had never represented anyone in a federal *habeas*

proceeding. (<u>Id.</u>, pp. 42, 44.) Mr. Bruce testified further that Petitioner did not ask him to represent

him in federal *habeas* proceedings and he never told Petitioner that he would continue to represent

him after the conclusion of his State *habeas* proceedings or that Petitioner had a remedy in Federal

15

Court. (<u>Id.</u>, pp. 52 - 53.) Mr. Bruce stated, "There was never a discussion about federal remedies or thought about federal remedies by me until the state Supreme Court ruled on the *habeas* we filed with them." (<u>Id.</u>, p. 56.) Otherwise, Mr. Bruce's basically restated on cross examination and redirect what he had said on direct examination. (<u>Id.</u>, pp. 54 - 61.) Mr. Bruce reiterated that he terminated representation of Petitioner verbally on April 7, 2011, by telling Petitioner that he could do nothing more for him. (<u>Id.</u>, pp. 53 - 54, 59, 66 - 67.) The Court then questioned Mr. Bruce, and Mr. Bruce testified that when the United States Supreme Court denied Petitioner's request for review, he did not think about his right to federal *habeas* review though he knew that Petitioner had that right. Mr. Bruce testified that he knew generally about the statute of limitations for instituting federal *habeas* proceedings but apparently, because there is no such limitation upon filing State *habeas* proceedings, he did not think the federal limitation period was imminent. (<u>Id.</u>, pp. 61 - 63.)

Petitioner then testified. Petitioner testified that he and Mr. Bruce began talking about federal *habeas* proceedings "whenever he took the case" and before his trial in the Summers County Circuit Court. (<u>Id.</u>, p. 70.) Petitioner testified that Mr. Bruce "said that he'd take it as far as he could go, to the highest court in the land." (<u>Id.</u>, pp. 70, 104.) Petitioner testified that upon reading a note which Mr. Bruce wrote in the John Grisham book "The Innocent Man" as Mr. Bruce had sent it to him stating "Tony, I hope this helps. This is where we can go." and reading the book, he understood that "you would have more justice in federal court . . .." (<u>Id.</u>, pp. 71, 104.) Petitioner testified that Mr. Bruce "always encouraged me that he was going to take it as far as we had to go." (<u>Id.</u>, p. 73.) He stated that after the United States Supreme Court denied his request for review, he did not know what the next step was and relied entirely upon Mr. Bruce to carry the case forward. (<u>Id.</u>) Petitioner testified that when Mr. Bruce visited him on April 7, 2011, they talked about why Mr. Bruce had

16

not instituted federal *habeas* proceedings and Mr. Bruce "promised by June the 1st of 2011 he would have it filed."[1] (Id., pp. 74 - 75.) Petitioner testified that "I was wondering why he hadn't done anything for a long period of time. I called the office and they would say, 'He's working on it.' I believed them. I had no reason to doubt it." (Id., p. 76.) Petitioner testified that when Mr. Bruce visited him in April, 2011, he did not tell him that his representation ended when the West Virginia Supreme Court of Appeals denied his *habeas* appeal and he was no longer representing him. (Id., pp. 78, 103.) Petitioner did not remember signing an agreement to retain Mr. Bruce's firm to represent him, paid for Mr. Bruce's services in cash and apparently received receipts when he did so but did not receive billing statements. (Id., pp. 78 - 79, 101 - 102.) Petitioner testified that after the West Virginia Supreme Court of Appeals denied his habeas appeal, he called Mr. Bruce's office and spoke to Mr. Bruce's staff about federal *habeas* and Mr. Bruce's secretary told him that Mr. Bruce was working on it. (Id., pp. 81 - 82.) Petitioner testified that he did not know about the statute of limitations until he spoke with an inmate at Huttonsville Correctional Center in July, August or early September, 2011. (Id., pp. 82, 91.) Petitioner testified that he learned that Mr. Bruce was not going to institute federal *habeas* proceedings in November, 2011, when he received letters and documents pertaining to proceedings which he had initiated before the Lawyer Disciplinary Board. (Id., pp. 83 - 84, 102 - 103.) Petitioner testified that Mr. Bruce "made me comfortable all the way. I trusted him. He made me believe he was going to do it all." (Id., p. 106.)

---

[1] The undersigned notes that in Petitioner's Section 2254 Petition and a December 14, 2011, letter addressed to the Clerk of the United States Supreme Court, Petitioner alleges that Mr. Bruce promised to file his Section 2254 Petition by May, 2011. (Document No. 6, pp. 11 and 19, Document No. 6-6 and Document No. 32-2, p. 60.) In a September 14, 2012, letter to the Court, Petitioner stated that Mr. Bruce promised to file his Section 2254 Petition "by the first part of June, 2011." (Document No. 41.)

Respondent submitted a Supplemental Brief in Opposition to Equitable Tolling on November 25, 2013. (Document No. 103.) Respondent states that by operation of Section 2244(d)(1), Petitioner was required to initiate federal *habeas* proceedings by October 1, 2008, one year after the United States Supreme Court denied his request for review. Respondent appears to contend that the Court's inquiry should be limited to the period of time from October 1, 2007, when the United States Supreme Court denied Petitioner's request for review and February 2, 2009, when Petitioner initiated *habeas* proceedings in the Circuit Court of Summers County. Respondent states that Mr. Bruce's actions after February 2, 2009, "are irrelevant to this timeliness inquiry." (Id., p. 2.) Respondent claims that Petitioner has not introduced "any evidence showing that exceptional circumstances beyond his control prevented him from filing his state habeas petition within a year of the denial of his direct appeal." (Id.) Respondent anticipates Petitioner's claim that he was diligent in requesting that Mr. Bruce initiate State *habeas* proceedings within the one year period thus tolling the running of the statute of limitations and Mr. Bruce failed to do so. Respondent urges that even assuming these circumstances, Mr. Bruce can only be said to have acted negligently and "it is the type of simple attorney negligence that does not justify equitable tolling." (Id., p. 3.) Respondent argues that the circumstances in this case involving at most Mr. Bruce's "simple attorney negligence" are distinct from those in Goedeke v. McBride, 437 F.Supp.2d 590 (S.D.W.Va. 2006), in which the attorney committed "serious misconduct" by falsely reassuring his client over a period of six years that he was working on his federal habeas matter when he was not and leading his client to have "a false sense of trust." Goedeke, 437 F.Supp.2d at 598. (Id., pp. 3 - 4.) Respondent states that "[a]t most, the record shows that Daugherty's counsel was ignorant of federal habeas corpus deadlines. * * * The only 'assurance that Daugherty can point to is a John Grisham

18

book that Mr. Bruce gave Daugherty in which the protagonist won federal habeas relief. This is not the type of gross attorney misconduct and false sense of trust that <u>Goedeke</u> held could justify exceptional circumstances and equitable tolling." (Id., p. 4.)

Petitioner submitted a Memorandum Brief Post-Evidentiary Hearing on November 25, 2013, as well. (Document No. 104.) Petitioner focuses upon the evidence that Mr. Bruce gave him the John Grisham book "The Innocent Man" in 2007 after the conclusion of his direct appeal and his testimony that Mr. Bruce stated, "We'll take it to federal court. . . . That's where you'll get action." Petitioner states that "[t]he evidence regarding the book, combined with Daugherty's testimony that Bruce told him he would pursue the case as far as needed, establishes that Bruce began reassuring Daugherty shortly after he lost his direct appeal that Bruce would pursue all avenues, making explicit reference to the federal <u>habeas corpus</u> writ. As a result, the facts do not support the State's simplistic contention that what happened in 2011 is irrelevant. If Bruce told Daugherty continuously, beginning with the loss of his direct appeal in 2007 and extending into 2011 that Bruce would pursue all remedies, including this federal remedy, then the events of 2011 support the equitable tolling of the statute of limitations . . .." (Id., p. 3.) Petitioner asserts that this matter is analogous to and "squarely within the holding of" <u>Goedeke</u> stating, "Daugherty's former counsel led him to believe that he would pursue his post-conviction case as far as possible, including explicitly the federal *habeas corpus* remedy. Only after Daugherty discovered the AEDPA statute of limitations, and filed a complaint against his former counsel with the Office of Disciplinary Counsel, did his former counsel maintain that his representation of Daugherty ended in 2010." (Id., pp. 3 - 4, 7.) Petitioner maintains that Mr. Bruce did not inform Petitioner directly that his representation ended in 2010 but Petitioner became aware of it through Mr. Bruce's communications with the Office of Disciplinary

19

Counsel. (Id., p. 4.) Petitioner claims that "[t]he entirety of the written record that Bruce assembled to substantiate the claimed cessation of representation was manufactured in response to Daugherty's complaint to the Disciplinary Counsel. The record contains no documentary corroboration of Bruce's claim – and certainly no contemporaneous documentation. What documentary evidence the record does contain regarding Bruce's representation of Daugherty shows Bruce researching federal *habeas* law in 2011, well after he claims he no longer represented his client." (Id., p. 5.) Petitioner then refers to a document indicating all of his telephone calls to Mr. Bruce while he was incarcerated and points out that his "calls to Bruce did not abate after the State Supreme Court rejected his state *habeas* petition in June 2010, which is when Bruce claims he ceased to represent Daugherty. * * * After June 2010, there is little else Bruce could have been working on than a federal habeas petition. Why did Daugherty continue to call him, then, if not to inquire about that? In the face of Daugherty's continued telephone calls, why did Bruce not write him to stress that he was no longer his lawyer?"[2] (Id., p. 6.) In conclusion, Petitioner states that "[t]he facts establish extraordinary actions by Daugherty's former lawyer that were beyond Daugherty's control. Daugherty was entitled to trust his lawyer. The Rules of Professional Conduct and the traditions of the profession are designed to foster such trust. Counsel's failure to honor his client's trust . . . is an extraordinary event. The courts are duty-bound to see such a failure as extraordinary, and to administer justice consistent with what lawyers are professionally obligated to do for their clients. This is not a simple

---

[2] Petitioner attached a copy of the document indicating all of his telephone calls to Mr. Bruce's office from December 21, 2007, to April 29, 2011, indicating that Petitioner called Mr. Bruce's office 244 times during that entire period. (Document No. 104-1.) Petitioner called Mr. Bruce 45 times on 33 days between June 22, 2010, when the West Virginia Supreme Court of Appeals refused to review the Summers County Circuit Court's ruling upon his State *habeas* petition, and April 6, 2011, and spoke with Mr. Bruce or someone at his office 23 times for a total of about 75 minutes.

case of negligence. If Bruce was not sufficiently skilled to handle a federal *habeas* petition, he owed it to his client to tell him so. At the very least, he owed it to his client not to actively foster the impression that he was on top of the federal *habeas* remedy, and not to allow his client to believe falsely that this was so." (Id., pp. 6 - 7.)

## ANALYSIS

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 [AEDPA], effective April 24, 1996, provides that Section 2254 *habeas* petitions must be filed within one year after "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).[3] If the Petitioner does not petition for a Writ of Certiorari in the United States Supreme Court upon the denial of direct review in the highest State Court, then the one-year limitation period begins to run

---

[3] Title 28, United States Code, Section 2244(d)(1) provides as follows:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

90 days after judgment is entered in the highest State Court (i.e., when the period for filing a petition for a Writ of Certiorari in the United States Supreme Court expires). <u>See</u> <u>Harris v. Hutchinson</u>, 209 F.3d 325, 328 (4th Cir. 2000).

Petitioner's conviction became final on October 1, 2007, when the United States Supreme Court denied his Petition for a Writ of Certiorari. Thus, pursuant to Rule 6(a) of the Federal Rules of Civil Procedure,[4] the one-year statute of limitation began to run on October 2, 2007, and Petitioner had until October 1, 2008, to file a Section 2254 Application in the United States District Court, unless he first sought post-conviction relief from the State Courts.

Petitioner filed his first State *habeas* Petition on February 2, 2009, approximately 4 months after the one year period expired. Accordingly, the one-year statute of limitation was not tolled by Petitioner's State *habeas* proceedings as Petitioner did not have a State *habeas* petition pending at any time between October 2, 2007, through October 1, 2008. Petitioner filed his instant Section 2254

---

[4] Rule 6(a) of the Federal Rules of Civil Procedure provides in part, as follows:

**(a) Computing Time.** The following rules apply in computing any time period specified in these rules, in any local rule or court order, or in any statute that does not specify a method of computing time.

### (1) Period Stated in Days or a Longer Unit.

When the period is stated in days or a longer unit of time

**(A)** exclude the day of the event that triggers the period;

**(B)** count every day, including intermediate Saturdays, Sundays, and legal holidays; and

**(C)** include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.

Application on December 6, 2011, about three years and two months after the Section 2244(d) period of limitations expired.[5] Therefore, the undersigned finds that Petitioner's Section 2254 *habeas* Petition was filed well beyond the Section 2244(d) period of limitations.

Nevertheless, the one-year limitation period may be subject to equitable modification in appropriate cases. See Holland v. Florida, 560 U.S. 631, 645, 130 S.Ct. 2549, 2560, 177 L.Ed.2d 130 (2010); Harris, 209 F.3d at 328-31. In Holland, the United States Supreme Court concluded that Section 2244(d) may be tolled "only if [the petitioner] shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Holland, 560 U.S. at 649, 130 S.Ct. at 2560 - 2562; also see Harris, 209 F.3d at 330 (petitioner bears the burden of proof regarding equitable tolling). The doctrine of equitable tolling has generally been applied in two distinct situations. First, the doctrine has been applied in situations where the petitioner was prevented from asserting his claims due to the respondent's wrongful conduct. Harris, 209 F.3d at 330. Second, the doctrine has been applied in situations where the petitioner was prevented from asserting his claims due to circumstances beyond his control or "external to the party's own conduct." Id. The United States Supreme Court indicated that Courts considering situations presented as bases for equitable tolling should do so on a case-by-case basis with flexibility in view of the totality of the circumstances. Holland, 560 U.S. at 650; 130 S.Ct. at 2563. The Court stated that "courts of equity can and do draw upon decisions made in other similar cases for guidance. Such courts exercise judgment in light of prior precedent, but with awareness

---

[5] The Circuit Court of Summers County denied Petitioner's State *habeas* petition on December 11, 2009, and the West Virginia Supreme Court refused Petitioner's appeal on June 22, 2010. Approximately one year and five months later, Petitioner filed a Petition for Writ of Mandamus with the West Virginia Supreme Court (November 18, 2011) and his instant Section 2254 Application with this Court (December 6, 2011).

of the fact that specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case." Id.; See also Socha v. Broughton, ___ F.3d __, 2014 WL 3953932 at *9 (C.A.7 (Wis.)) The Harris Court made it clear that equitable tolling should rarely be allowed stating as follows (Id.):

> [A]ny invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes. To apply equity generously would loose the rule of law to whims about the adequacy of excuses, divergent responses to claims of hardship, and subjective notions of fair accommodation. We believe, therefore, that any resort to equity must be reserved for those rare instances where – due to circumstances external to the party's own conduct – it would be unconscionable to enforce the limitation period against the party and gross injustice would result.

Under the first prong of the Holland test, Petitioner must demonstrate that he pursued his rights with reasonable diligence. Holland, 560 U.S. at 653, 130 S.Ct. at 2565. A petitioner demonstrates that he pursued his rights with reasonable diligence by submitting letters which he wrote to his attorney and proving that he contacted the State Courts and their clerks and the State bar association and initiated proceedings in the District Court under Section 2254 promptly upon learning of the Section 2244(d)(1) period of limitations. Id.[6]

Under the second prong of the Holland test, Petitioner must demonstrate the extraordinary

---

[6]  In Holland, the United States Supreme Court determined that the following facts "may well be an 'extraordinary' instance in which petitioner's attorney's conduct constituted far more than 'garden variety' or 'excusable neglect'": (1) counsel's failure to timely file the federal habeas petition "despite Holland's many letters that repeatedly emphasized the importance of his doing so;" (2) counsel's failure to "do the research necessary to find out the proper filing date, despite Holland's letters that went so far as to identify the applicable legal rules;" (3) counsel's failure "to inform Holland in a timely manner about the crucial fact that the Florida Supreme Court had decided his case, again despite Holland's many pleas for that information;" and (4) counsel's failure "to communicate with his client over a period of years, despite various pleas from Holland that [counsel] respond to his letters." Holland, 560 U.S. at 652, 130 S.Ct. at 2564.

24

circumstances prevented him from pursuing his rights. An attorney's mistake in interpreting the Section 2244 statute of limitations does not constitute an extraordinary circumstance warranting equitable tolling. Id. at 331; see also Dillon v. Conway, 642 F.3d 358, 364 (2nd 2011); United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004); Rouse v. Lee, 339 F.3d 238, 248 - 249 (4th Cir. 2003) Mathers v. Seifert, 2008 WL 2437629 (S.D.W.Va.)(Chief Judge Goodwin).[7] Thus, errors of counsel are not circumstances beyond a petitioner's control or "external to [his] own conduct." "[C]ounsel's errors are attributable to [the petitioner] not because he participated, ratified, or condoned their decisions, but because they were his agents, and their actions were attributable to him under standard principles of agency." Rouse v. Lee, 339 F.3d at 249. "While attorney misconduct must be more egregious than a 'garden variety claim of excusable neglect' to be considered an extraordinary circumstance, the requirement might be met by a showing of an extraordinary failure by the attorney to provide reasonably competent legal work, to communicate with his client, to implement his client's reasonable requests, to keep his client informed of key developments of their cases, or to never abandon a client." United States v. Oriakhi, 394 Fed. Appx. 976, 977 (4th Cir. 2010)(citing Holland, ___ U.S. at ___, 130 S.Ct. at 2562-65; also see Downs v. McNeil, 520 F.3d 1311, 1321

---

[7] The undersigned notes that there is no time limit for the filing of a State *habeas* Petition and there is no right to counsel in State *habeas* proceedings under West Virginia law. Rather, *W.Va. Code* § 53-4A-4(a) states that under certain circumstances, the Circuit Court must appoint counsel in *habeas* proceedings as follows:

> A petition filed under the provisions of this article may allege facts to show that the petitioner is unable to pay the costs of the proceeding or to employ counsel, may request permission to proceed in forma pauperis and may request the appointment of counsel. If the court . . . is satisfied that the facts alleged in this regard are true and that the petition was filed in good faith, and has merit or is not frivolous, the court shall order that the petitioner proceed in forma pauperis, and the court shall appoint counsel for the petitioner.

(11th Cir. 2008); see also Fleming v. Evans, 481 F.3d 1249, 1256 (10th Cir. 2007). "It is not inconsistent to say that attorney error *normally* will not constitute the extraordinary circumstances required to toll the AEDPA limitations period while acknowledging that at some point, an attorney's behavior may be so outrageous or so incompetent as to render it extraordinary." Baldayaque v. United States, 338 F.3d 145, 152 (2nd Cir. 2003)(emphasis in decision). For example, an attorney's repeated false assurances to a petitioner concerning the preparation of a petition for *habeas corpus* may constitute extraordinary circumstances warranting equitable tolling. See Goedeke v.McBride, 437 F. Supp.2d 590 (S.D.W.Va. 2006)(Chief Judge Goodwin)(finding that the statute of limitations was equitably tolled during the time period that petitioner was represented by appointed counsel in his State *habeas* proceeding because counsel made repeated false assurances that led petitioner to believe that counsel would complete his petition and petitioner had no reason to disbelieve counsel's assurances.); Mathers v. Seifert, 2008 WL 2437629, *4 (S.D.W.Va.)(Chief Judge Goodwin)(attorney's repeated reassurances that he was working on petitioner's *habeas corpus* petition when in fact no petition was prepared and filed for years constituted extraordinary circumstances.) An attorney's violation of the Rules of Professional Conduct can amount to an extraordinary circumstance when it "seriously prejudiced a client who thereby lost what was likely his single opportunity for federal habeas review of the lawfulness of his imprisonment . . . ." Holland, 560 U.S. at 653, 130 S.Ct. at 2565. In Holland, "the 'extraordinary circumstances' at issue involve an attorney's failure to satisfy professional standards of care." Holland, 560 U.S. at 649, 130 S.Ct. at 2562. The Holland Court stated that an attorney's "professional misconduct . . . could . . . amount to egregious behavior and create an extraordinary circumstance that warrants equitable tolling." Holland, 560 U.S. at 651, 130 S.Ct. at 2563. See also Maples v. Thomas, __ U.S. __, 132 S.Ct. 912,

923 - 924, 181 L.Ed.2d 807 (2012)("[u]nder agency principles, a client cannot be charged with the acts or omissions of an attorney who has abandoned him. Nor can a client be faulted for failing to act on his own behalf when he lacks reason to believe his attorneys of record, in fact, are not representing him.")

In view of the above authority, the question presented is whether Petitioner pursued his rights under Section 2254 diligently and, if so, whether extraordinary circumstances beyond his control, Mr. Bruce's actions and omissions, prevented him in his pursuit. The undersigned finds that Petitioner pursued his rights under Section 2254 with reasonable diligence and Mr. Bruce's actions and omissions constituted extraordinary circumstances beyond Petitioner's control which prevented him in his pursuit. It is undisputed that Mr. Bruce represented Petitioner at trial, on direct appeal, on Petition for Writ of Certiorari and in State *habeas* proceedings which were concluded June 22, 2010, when the West Virginia Supreme Court of Appeals refused Petitioner's appeal of the Summers County Circuit Court's ruling in his State *habeas* proceedings.[8] Mr. Bruce was, therefore, Petitioner's attorney throughout the entire period of time and well beyond the time when the Section 2244(d) one-year statute of limitations was running, October 2, 2007, to October 1, 2008.[9]

Did Petitioner pursue his rights under Section 2254 diligently? Petitioner wrote Mr. Bruce letters and called Mr. Bruce very often throughout the entire period when Mr. Bruce was

---

[8] Mr. Bruce admits that he represented Petitioner until June 22, 2010, and denies representing him thereafter claiming that he told Petitioner that his representation ended on June 22, 2010, when he visited him at the Huttonsville Correctional Center on April 7, 2011. Documents indicate that Mr. Bruce stated directly in writing that his representation of Petitioner ended then by letter dated November 2, 2011. (Document No. 15.).

[9] It is evident that Mr. Bruce charged Petitioner $92,389, and it appears that Petitioner paid Mr. Bruce $47,613.10 for his services. (Document No. 6 - 1.)

representing him and well beyond that period. The Court has no information, however, respecting the substance of the communications though it is likely that Petitioner and Mr. Bruce at a minimum discussed the status of proceedings which were pending at the time. While the Section 2244(d)(1) statute of limitations was running from October 2, 2007, to October 1, 2008, it is evident that Petitioner called Mr. Bruce 58 times on 42 days and spoke with Mr. Bruce or someone at his office seven times for a total of about 33 minutes. The Court has no information that Petitioner attempted to call the State Courts or their Clerks at any time while Mr. Bruce was representing him. Petitioner initiated proceedings in the Office of Disciplinary Counsel on August 25, 2011, complaining that Mr. Bruce had not filed a Section 2254 Petition in this Court when he said he would. After learning of the Section 2244(d)(1) statute of limitations from another inmate sometime between July and September, 2011, as Petitioner testified, Petitioner filed his Section 2254 Petition in the United States District Court for the Northern District on December 6, 2011. Though it does not appear that Petitioner knew or understood specifically what his rights were under Section 2254 and the requirement that a Section 2254 petition be submitted on time, it is clear that Petitioner knew and understood generally that he had the right to further proceedings in *habeas corpus* after he exhausted his right to direct appeal and pursued his *habeas* rights such as he knew them with reasonable diligence throughout the period of time when the Section 2254 statute of limitations was running and thereafter.

Did extraordinary circumstances beyond Petitioner's control, Mr. Bruce's actions and omissions, prevent Petitioner from pursuing his rights under Section 2254 in a timely manner?[10]

---

[10] The undersigned finds that Mr. Bruce violated the Rule of Professional Conduct when he went from representing Petitioner in direct criminal proceedings to representing Petitioner in *habeas* proceedings as, in doing so, he developed an actual conflict of interest. As he represented Petitioner in *habeas* proceedings, he was required to consider whether or not error existed of a constitutional magnitude in the record of the direct criminal proceedings including whether or not he had

While Mr. Bruce testified that he never agreed to represent Petitioner in Section 2254 proceedings, his testimony is contradicted by evidence that he had associates in his office conduct legal research respecting Federal *habeas* proceedings and prepare a Petition and continued to take Petitioner's telephone calls and visit Petitioner for months after he claims his representation ended. It is not evident that Mr. Bruce made it clear to Petitioner that he would not represent him in Federal *habeas* proceedings while he was representing him. Rather, it is evident that Mr. Bruce led Petitioner to believe that he represented him in all respects pertaining to his trial and conviction including Federal *habeas* proceedings. Apparently having made no definitive statement respecting the scope of his representation, Mr. Bruce gave Petitioner the John Grisham book "The Innocent Man" when the West Virginia Supreme Court of Appeals denied his direct appeal (November 29, 2006) and told Petitioner, "This is the avenue you can follow." The main character in "The Innocent Man", Mr. Ron

---

represented Petitioner effectively in those proceedings. *Martinez v. Ryan*, 566 U.S. ___, 132 S.Ct. 1309, 182 L.Ed. 2d 272 (2012); *Trevino v. Thaler*, ___ U.S. ___, 133 S.Ct. 1911, 1918, 185 L.Ed.2d 1044 (2013); *United States v. Magini*, 973 F.2d 261, 264 (4th Cir.)("[A] conflict may . . . exist between an attorney's private interests and those of the client."); *Gray v. Pearson*, 526 Fed.Appx. 331, 334 (4th Cir. 2013)(Where the District Court appointed the same attorney who represented petitioner in state *habeas* proceedings to represent him in federal habeas proceedings, "a clear conflict of interest exists in requiring [petitioner's] counsel to identify and investigate potential errors that they themselves may have made in failing to uncover ineffectiveness of trial counsel while they represented [petitioner] in his state post-conviction proceedings."] *See also Manning v. Foster*, 224 F.3d 1129, 1134 (9th Cir. 2000)(An attorney's conflict of interest constitutes cause for a petitioner's procedural default in *habeas* proceedings where the conflict caused the attorney to interfere with the petitioner's right to pursue his claim in the *habeas* proceedings that the attorney was ineffective in direct criminal proceedings.). The impact of the Rule violation, however, is claim specific. It does not extend beyond the failure to allege ineffectiveness in federal *habeas* proceedings to the failure to initiate federal proceedings within the one-year statute of limitations. *Howell v. McFadden*, 2014 WL 791504 (D.S.C.); *Pee v. McCall*, 2013 WL 6150796 at *4 (D.S.C.)("Martinez does not provide for the review of untimely claims, but allows for the review of procedurally defaulted grounds in very narrow circumstances.") Mr. Bruce's conflict of interest in violation of the Rules of Professional Conduct does not, therefore, constitute an extraordinary circumstance which prevented Petitioner from pursing his rights under Section 2254.

29

Williamson, is tried and convicted of the rape and murder of Ms. Debbie Carter and sentenced to death. He finds relief finally in federal *habeas corpus* proceedings. From the book and Mr. Bruce's statement, Petitioner could reasonably understand that Mr. Bruce would represent him through all proceedings pertaining to his trial and conviction including Federal *habeas corpus* proceedings. In fact, Mr. Bruce's next move was to initiate proceedings in a Federal Court, the United States Supreme Court. Understanding this, Petitioner quite naturally would have believed that Mr. Bruce knew the procedural requirements for carrying his matter forward through *habeas corpus* proceedings in State and Federal Courts and trusted him to do so. Trusting Mr. Bruce without any indication from Mr. Bruce that his representation was limited to State Court proceedings, Petitioner did nothing on his own to protect and pursue his Federal *habeas* rights, and the time for doing so slipped away. The undersigned finds that Mr. Bruce violated the Rules of Professional Conduct by failing to inform Petitioner of the limits of his representation and obtain Petitioner's consent.  Rule 1.2(a) of the Rules of Professional Conduct provides that an attorney "shall abide by a client's decisions concerning the objectives of representation . . . and shall consult with the client as to the means by which they are to be pursued." Rule 1.2(c) provides that an attorney "may limit the objectives of the representation if the client consents after consultation." Under these Rules, Mr. Bruce was ethically required, having agreed to represent Petitioner in State *habeas corpus* proceedings, to know and discuss with him how he might proceed with his claims in State and Federal Courts including how he might be barred procedurally, as Respondent claims herein, or substantively by failing to raise a claim along the way. Even if Petitioner consented to the limiting of Mr. Bruce's representation to State *habeas* proceedings, if Petitioner indicated that he wanted to carry his claims into Federal Court when those proceedings were concluded, Mr. Bruce was

obligated to represent Petitioner in State *habeas* proceedings such that Petitioner was not barred procedurally or substantively in Federal *habeas* proceedings. Mr. Bruce was therefore required to commence Petitioner's State *habeas* proceedings well within the one year period after the United States Supreme Court denied Petitioner's certiorari petition in order to preserve Petitioner's opportunity for Federal *habeas* review. The undersigned further finds that this matter is generally similar to <u>Goedeke</u> insofar as Mr. Bruce by his actions (giving Petitioner the book "The Innocent Man" and telling him that "This is the avenue you can follow") and omissions (failing (1) to inform Petitioner definitively that his representation was limited to State *habeas* proceedings and he would not represent Petitioner in Federal *habeas* proceedings, (2) to inform Petitioner that he had one year after his conviction became final to initiate Federal *habeas* proceedings unless the period was tolled by State Court *habeas* proceedings and (3) to initiate Petitioner's State *habeas* proceedings within one year after Petitioner's conviction became final thereby tolling the Section 2244 limitation period) "coerced [Petitioner] into a false sense of trust." <u>Goedeke</u>, 437 F.Supp.2d at 599.  Mr. Bruce's actions and omissions "seriously prejudiced [Petitioner] who thereby lost what was likely his single opportunity for federal habeas review of the lawfulness of his imprisonment . . . ." <u>Holland</u>, 560 U.S. at 653, 130 S.Ct. at 2565. Mr. Bruce's actions and omissions constitute extraordinary circumstances justifying equitable tolling of the Section 2244(d)(1) statute of limitations in this case.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **DENY** Respondent's Motion for Summary Judgment (Document No. 32.), and refer this matter back to the undersigned for further proceedings respecting the merits of Petitioner's claims including any claims

he might raise that Mr. Bruce was ineffective in representing him if appropriate.

The parties are hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have seventeen days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.) cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Berger, and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to counsel of record and to Petitioner.

Dated: October 30, 2014.

R. Clarke VanDervort
United States Magistrate Judge